John J. O’Brien, J.
These four habeas corpus proceedings have been commenced by relators who pleaded guilty to misdemeanors and were found by the court to be narcotic addicts. Each has been certified to the Narcotic Addiction Control Commission (hereafter N. A. C. C.) and has been held for treatment at the Great Meadow Correctional Institution. The proceedings have been consolidated for trial before me.
In these proceedings, they jointly contend that they should not have been committed to Great Meadow, where the treatment *792 is for crimes, whereas they should receive treatment for drug addiction as a disease or sickness; that commitment to Great Meadow by the N. A. O. C. was illegal and contrary to section 208 (subd. 4, pars, a, b; subd. 5) of the Mental Hygiene Law; that they have been denied equal protection under the laws because there is no standard for the classification of drug addicts; that they were deprived of their liberty without due process of law; that commitment to Great Meadow for a period up to 36 months constitutes cruel and unusual punishment; that they received no credit for time served prior to being certified as drug addicts; and that there exists no bona fide program for the treatment of drug addiction at Great Meadow with the result that they are in effect serving an indeterminate sentence of up to 36 months.
Relators do not question the constitutionality of any of the provisions of the statute (cf. Matter of James, 22 N Y 2d 545; People v. Fuller, 24 N Y 2d 292).
The return in each case showed that N. A. 0. 0. had entered into a contract with the State Department of Correction for the use by N. A. C. C. of the Department’s facilities and services for the treatment of narcotic addicts. The contract provided for the creation of three classes of addicts, C, B and A, C for the lowest order of achievement and A for the highest. The contract called for each group’s meeting at least three times per week, each meeting to last for one and one-half hours. The Department agreed to use its staff, providing those participating in the program with additional training to qualify them. The Department of Correction agreed to use the expertise, facilities and services of Reality House, Inc. A contract had also been entered into between Reality House, Inc., and the Department whereby Reality House agreed to conduct a training program for the Department’s staff, to co-ordinate and guide the narcotics units and in general to lend its expertise in narcotic addiction treatment to the Department. The returns showed that each relator pleaded guilty to misdemeanors. Relator Medina was charged with being a drug addict but he denied it. He was then afforded a hearing on the issue and the court (Suffolk County Court, Thomas M. Stark, J.) determined that Medina was an addict.
The other relators were found on medical examination to be narcotic addicts. The form of the order of commitment in each case reads as follows, except in Medina’s case where it was altered: ‘ ‘ and this Court having received a report of medical examination performed at a facility of the New York State *793 Narcotic Addiction Control Commission, indicating that the defendant is a narcotic addict within the meaning of Article 9 of the Mental Hygiene Law; and the defendant having been given the opportunity to admit, deny or stand mute with respect to the issue of narcotic addiction; and the defendant having admitted that he is a narcotic addict, or having had a hearing on the issue of alleged narcotic addiction, and the court having determined that defendant is a narcotic addict The order in each case certified the addict to N. A. C. C. for a period up to 36 months.
The proof offered with respect to Great Meadow showed that the program of narcotic addiction control started slowly but by September, 1968, it was rolling along and at the time the testimony was given in December, 1968, the program had developed quite fully. Relator Stutz had moved from the 0 group to the B group, acknowledged that he had benefited from the program and he had the feeling that he could move to the A group and from there he could be released from the institution to the outside world and rehabilitation. While the correction officers who were leaders of the program were not specifically trained in that sort of work in the form of college and graduate school degrees, they had been receiving lectures from Reality House, Inc. and had acquired a degree of proficiency, despite their lack of specific schooling.
Relators contend that because Great Meadow is a correctional facility under the Department of Correction, commitment for treatment there violates the intent of article 9 of the Mental Hygiene Law. As the court made quite clear in People v. Fuller (24 N Y 2d 292, supra), the purpose of article 9 is rehabilitative and calls for a period of deprivation of liberty during which the purposes of the program can be fulfilled. It matters not that Great Meadow is a correctional institution. Indeed, there is testimony that at least 40 inmates, most of them young people, are narcotic addicts who, although not certified under article 9, partake in the program, voluntarily attending the classes regularly. In order for relators to obtain the benefits of the program, their liberty must be sacrificed. It must also be remembered that they are misdemeanants who, if they were not certified to the N. A. C. C., must be sent to a prison in accordance with the provisions of the Penal Law (People v. Fuller, supra).
Closely related to the first contention is the second contention that under section 208 (subd. 4, par. a) of the Mental Hygiene Law, relators must be certified to the care of the N. A. C. C. and *794 not to a correctional institution. That paragraph provides in part that: ‘ ‘ Where sentence is to be imposed for a misdemeanor * * * the defendant shall be certified to the care and custody of the commission for an indefinite period The order of certification does certify each relator to the commission. Relators overlook the practicalities of the problem faced by the N. A. C. C. A newly formed agency, it was supposed to provide facilities overnight. Obviously, it could not be done. The contract made by the N. A. C. C. with the Department of Correction for the use of the Department’s facilities is legal and satisfied the needs of the N. A. C. C. which requires a facility providing custody from which the addict cannot escape while he is receiving treatment. Great Meadow meets the needs of the N. A. C. C. and was readily available. The temporary use of such facility for the treatment of relators does not violate any of their rights. They have no right to specify the location in which they wish to be treated. That other inmates of Great Meadow, not certified to the commission, use the facilities of the commission voluntarily, shows that the contract made by the commission constituted a studied solution of its problem. In any event, even if relators’ contention were correct, such violation of article 9 would not constitute any deprivation of any right of relators.
Relators contend that they have been denied equal protection under the laws. They contend that the record contains nothing as to the manner in which drug addicts are classified and the basis for classification for commitment to a correctional institution as opposed to a hospital or other facility. The contract between N. A. C. C. and the Department of Correction provides for classification into three groups. The contract even spells out the degree of achievement required for classification. These degrees are somewhat vague and they overlap. This does not deprive relators of their rights. The question of whether relators belong to an A group or a C group is a matter for the exercise by 1ST. A. C. C. of its expertise administered for it by Reality House, Inc. The courts must let the administrative agency with expertise work out the specifics of the program on the bases of its experience and should not interfere to scuttle the program on so tenuous a basis (People ex rel. Baker v. Narcotic Addiction Control Comm., 58 Misc 2d 1069; People ex rel. Blunt v. Narcotic Addiction Control Comm., 58 Misc 2d 57).
Relators' contend that commitment to a correctional institution constitutes cruel and unusual punishment. Admittedly relators have been convicted of misdemeanors. They require confinement while they are subjected to the program of rehabili *795 tation. If they are properly motivated, any one of them can he released within a few months’ time, considerably less than the maximum of 36 months prescribed by the law. Under the circumstances, they must take the bad with the good (People v. Fuller, 24 N Y 2d 292, supra).
Relators contend that they are entitled to credit for the jail time they served prior to their pleas of guilty to the respective misdemeanors. This issue is premature. None has served the full 36 months of the certification and conceivably, each may be released as cured long before then. If any of them is held for the full 36 months, he might have cause for complaint then. Relators are not serious about this point, which although mentioned on page 6 of their brief, has not been developed as a full point of law.
People v. Fuller (24 N Y 2d 292, supra) holds that before certification to the N. A. C. C., each defendant is entitled to a jury trial on the issue of addiction if he contests the issue. Relator Medina contested the issue of whether he was an addict. Having been certified without a jury trial, the writ is granted as to him and he is remanded to the Suffolk County Court for a jury trial of the issue of addiction as of the date he pleaded guilty.
Relator Any os admitted to the Albany Police Court that he was an addict. Under the circumstances, he has waived the right to a jury trial (Mental Hygiene Law, § 208, subd. 1) and the writ as to him is denied and he is remanded to the custody of the N. A. C. C. Moreover there is a statement in the minutes that he commenced a coram nobis proceeding to test that issue.
Relator Stutz has acknowledged that the program has benefited him. In view thereof, he may wish to continue with the program for his early release as rehabilitated. Nevertheless the writ must be granted as to him and he must be remanded to the Albany Police Court for a jury trial of the issue of his addiction as of the date of his conviction, if he be so advised. If he determines after consultation with his attorney that he wishes to continue with the program for his early release, I shall, if an order denying the writ is submitted by his attorney, sign it and remand him to the N. A. C. C.
The writ is granted as to relator Romandette and he is remanded to the Suffolk County Court for a jury trial of the issue of his addiction as of the date of his conviction.