Leonard Rtjbeneeld, J.
The relator in this habeas corpus proceeding was convicted in 1967 of an attempted felonious possession of a weapon (former Penal Law, § 1897, subd. 2) and was sentenced to a reformatory term of up to five years’ imprisonment. On September 20,1970, while on parole from the Green Haven Correctional Facility, he was arrested on a new charge of criminal possession of a dangerous drug in the second degree (Penal Law, § 220.22). On February 9, 1971, upon his plea of guilty to a Class E felony and upon a determination that he was a narcotic addict, relator was certified to the care and custody of the Narcotic Addiction Control Commission (NACO) for a period of 60 months pursuant to section 208 of the Mental Hygiene Law. In the interim, the Division of Parole issued a *1010 declaration of delinquency and lodged a parole violation warrant against him as a detainer.
Pursuant to his sentence to the NACC, the relator was transferred to an NACC facility in Woodbourne, New York, where he remained until May 13, 1971, at which time he was “ released to the parole warrant ” to resume service of the 1967 sentence. Relator is presently incarcerated in the Creen Haven Correctional Facility pursuant to that sentence. A detainer warrant has been lodged against him by the NACC.
Relator contends that: (1) he should have been allowed to complete his 1967 sentence before starting his commitment to the NACC; (2) his sentence to the NACC for treatment of his addiction has been unlawfully interrupted; (3) he is entitled to credit on his 1967 sentence for the time spent in the custody of the NACC; and (4) he was unlawfully deprived of his right to counsel at his parole revocation hearing.
His contention that his 1967 sentence was unlawfully interrupted by his commitment to the NACC is without merit. Relator relies on subdivision 2 of section 2190 of the former Penal Law, which provided that “ Where a person, under sentence for a felony, afterward commits any other felony, and is thereof convicted and sentenced to another term of imprisonment, the latter term shall not begin until the expiration of all the terms of imprisonment, to which he is already sentenced.” That provision, however, has no application where the subsequent sentence is imposed for a crime committed after September 1, 1967 (Penal Law, § 5.05) and no comparable provision is contained in the revised Penal Law. (See Penal Law, §§ 70.25, 70.30, and the Practice Commentary thereon by Peter Preiser in McKinney’s Cons. Laws of N. Y., Book 39, Penal Law.) The immediate transfer of the relator to an NACC facility following his sentence to the NACC was entirely proper and did not constitute an unlawful interruption of his 1967 sentence. That sentence had already been interrupted as of the date of relator’s delinquency while on parole as a result of the Board of Parole’s declaration of delinquency (Correction Law, former § 218; Penal Law, § 70.40, subd. 3). A sentence lawfully interrupted by a declaration of delinquency does not begin to run again until the parolee’s return to an institution under the jurisdiction of the Department of Correction (former Correction Law, § 218; Penal Law, § 70.40, subd. 3; People ex rel. Petite v. Follette, 24 N Y 2d 60). Relator’s sentence to the NACC was imposed and started to run before he was ever returned to an institution under the jurisdiction of the Department of Correction (com *1011 pare Matter of Seible v. Oswald, 32 A D 2d 696), since a sentence to the NACC commences “ on the date the order of certification is made ” (Mental Hygiene Law, § 208, subd. 4, par. b; People ex rel. Cardona v. Singerman, 63 Misc 2d 509). Moreover, such sentence to the NACC. may not be unlawfully interrupted (former Code Crim. Pro. § 482, subd. 3; GPL 430.10; cf. People v. Rios, 37 A D 2d 734; People v. Michels, 30 A D 2d 666).
Relator’s claim that his sentence to the NACC for treatment of his addiction was unlawfully interrupted is more substantial. Relator was sentenced to the NACC for a period of 60 months on February 9,1971. He was turned over to the Board of Parole to serve the 1967 sentence just 3 months later. The NACC sentence had not terminated and, as previously indicated, the NACC has lodged a detainer warrant against the relator pending his release on parole or the termination of the 1967 felony sentence.
Relator’s transfer from the NACC to the Department of Correction was made pursuant to a“ Memorandum of Understanding Between the Board of Parole and the Narcotic Addiction Control Commission concerning Individuals under Jurisdiction of Both Agencies ” which provides in part as follows:
“ The Board of Parole and the Narcotic Control Commission are cognizant of the fact that there are overlapping jurisdictions in the duties and responsibilities with which they are charged. The Division of Parole is charged primarily with the responsibility of dealing with criminal offenders, while NACC has primary responsibility for the treatment of those " individuals addicted to narcotics. There are addicts who are also criminal offenders, and there are criminal offenders who incidentally are narcotic addicts. Both agencies of the State are aware of this dual responsibility and will as far as possible defer to each other in areas where primary responsibility lies.
“ Whenever an individual under the supervision and control of the Board of Parole is arrested on a new charge and subsequently committed by the Court to NACC, the Board of Parole and NACC will resolve their overlapping responsibility as expeditiously as possible so that the individual involved may receive the best possible treatment commensurate with the protection of the community.
# * #
“ The Board of Parole, cognizant that the Court has determined that the violator should be treated specifically for his narcotic addiction, will evaluate each case and consider the nature of the original crime, the parolee’s length of time on parole and *1012 his adjustment prior to his or her new arrest and conviction, the nature of the new conviction, and all pertinent factors in the case. The Board of Parole will determine whether in their opinion the offender’s problem is primarily of a criminal nature with narcotic usage as a subordinate factor, or whether narcotic addiction is the primary element with other anti-social behavior playing a minor role.
“ In the latter case the Board of Parole will probably cancel the existing delinquency and turn the individual over to NACC for institution of their rehabilitative program, and in all subsequent case contact will play a minor and subordinate role to the authority and jurisdiction of NACC.
“ If on the other hand the Board of Parole believes the parole violator has serious criminal potentials and poses far more of a threat to the safety and welfare of the community than that of narcotic addiction, the Board will order the return of the violator to the proper correctional institution. From that point on NACC will play a minor role and defer to the Board of Parole for subsequent release consideration, and supervision in the community.”
Pursuant to the foregoing memorandum of understanding the Board of Parole has apparently determined that ‘ ‘ in their opinion the offender’s problem is primarily of a criminal nature with narcotic usage as a subordinate factor ” and has ordered “ the return of the violator to the proper correctional institution ’ ’. The NACC has accordingly transferred the relator to the custody of the Board of Parole and the Department of Correction for service of the 1967 sentence.
The court is of the opinion that such transfer of the relator to the Department of Correction for service of the 1967 sentence was improper. Section 208 (subd. 4, par. b) of the Mental Hygiene Law provides that, where an addict is convicted of a felony, “ the court, in its discretion, may either (1) impose an indeterminate sentence to an institution under the jurisdiction of the state department of correction in accordance with the provisions of the penal law * * * or (2) certify such defendant to the care and custody of the commission ’ ’ (italics supplied). Under this section, it is the court, and not the Board of Parole, which is given the power to decide whether the offender’s problem is primarily the usage of narcotics or a proclivity toward criminal behavior and whether the interests of the defendant and the safety of the community will best be served by treatment in the custody of the NACC or by service of a sentence to an institution under the jurisdiction of the Department of *1013 Correction. Where the court has determined that certification to the care and custody of the NACC is most appropriate, the sentence of the court may not be ignored or annulled merely because the Board of Parole has come to a different conclusion concerning the nature of the defendant’s problem and the interests of the community. The Board of Parole has the power to require the parole violator to serve the portion remaining on his 1967 sentence (Penal Law, § 70.40, subd. 3; Correction Law, § 805, subd. 7) but it may not do so by interrupting the running of relator’s sentence to the NACC or by frustrating the rehabilitation program which the court has determined is warranted under the circumstances (cf. People v. Rios, 37 A D 2d 734, supra; People v. Michels, 30 A D 2d 666, supra). The Board of Parole and the Department of Correction may obtain physical custody of the relator under the 1967 sentence only after physical custody of the relator is lawfully relinquished by the NACC upon termination of the relator’s certification to the NACC, either by his discharge or the expiration of his sentence (Mental Hygiene Law, § 208, subd. 4); or after the relator is released from the physical custody of the NACC because the rehabilitation of the relator has progressed to the point where “ treatment in a controlled environment ” by the NACC is no longer required and a release from “in-patient confinement ” to an aftercare program is deemed advisable (People v. Rios, 37 A D 2d 734, supra; Mental Hygiene Law, § 200, subd. 3). In the case at bar, there has been neither a termination of the NACC sentence nor a release from in-patient confinement and, therefore, the relator’s present confinement at Green Haven under his 1967 sentence is improper.
This is not to say that a sentence to the NACC may not be served in the facilities and under the supervision of the Department of Correction. The service of an NACC sentence in such manner is specifically permitted — at least on a temporary basis (Mental Hygiene Law, § 204, subd. 12; § 206-a; People ex rel. Blunt v. Narcotic Addiction Control Comm., 58 Misc 2d 57, affd. 31 A D 2d 718, affd. 24 N Y 2d 850; People ex rel. Stutz v. Conhoy, 59 Misc 2d 791). However, the relator herein was transferred to Green Haven solely for the purpose of serving his 1967 sentence. Moreover, a sentence to the NACC is essentially rehabilitative in nature (People v. Fuller, 24 N Y 2d 292, 301) and since, as the court is informed, there is no longer any rehabilitation program for narcotic addicts in effect at Green Haven, relator’s continued confinement at Green Haven, even under the NACC sentence, would be unlawful unless an NACC program *1014 were reinstituted at that facility (cf. People ex rel. Brown v. Johnston, 9 N Y 2d 482; People ex rel. Meltsner v. Follette, 32 A D 2d 389; People ex rel. Smith v. La Vallee, 29 A D 2d 248; People ex rel. Kaganovitch v. Wilkins, 23 A D 2d 178; People v. Higgins, 10 Misc 2d 427). Accordingly, the writ of habeas corpus must be sustained to the extent of remanding the relator to the custody of the NACC for service of his sentence to the NACC at an appropriate facility.
Relator’s third contention, that he is entitled to credit on his 1967 sentence for time spent in jail pending sentence to the NACC and for time spent in the custody of the NACC, must be rejected. With respect to the time spent in jail pending sentence to the NACC, subdivision 3 of section 70.40 of the Penal Law provides in pertinent part that:
“ (c) Any time spent by a person in custody from the time of delinquency to the time service of the sentence resumes shall be credited against the term or maximum term of the interrupted sentence, provided:
(i) that such custody was due to an arrest or surrender based upon the delinquency; or
(ii) that such custody arose from an arrest on another charge, which culminated in a dismissal or an acquittal, and the person was denied admission to bail pending disposition of such charge due to a warrant lodged against him because of such delinquency.”
Neither of these conditions was met in the instant case and, therefore, the relator is not entitled to credit on his 1967 sentence for the time spent in jail awaiting sentence to the NACO.
With respect to the time spent in the custody of the NACC, relator seems to argue that the sentence to the NACC is an indeterminate sentence; that an indeterminate sentence runs concurrently with all prior sentences if, as here, the court does not specify otherwise (Penal Law, § 70.25, subd. 1, par. [a]); that since the sentence to the NACC is a concurrent sentence, the 1967 sentence began to run again when service of the sentence to the NACC commenced and, therefore, the time spent in the custody of the NACC should also be credited towards his 1967 sentence.
The court is unable to agree. A sentence to the NACC is an “ indefinite sentence” — a sentence for a maximum period fixed by law which may be terminated at any time by the discharge of the defendant (Mental Hygiene Law, § 208, subd. '4, par. b; cf. former Penal Law, § 2195; Correction Law, former § 288; People ex rel Moxon v. Fay, 36 Misc 2d 602), rather than *1015 an ‘ ‘ indeterminate sentence ” • — a sentence with a maximum term fixed by the court which term may not normally be reduced (but see Correction Law, § 805, subd. 8) although the defendant may be paroled or conditionally released prior to the expiration of the maximum term (Penal Law, § 70.00, subd. 1; § 70.40). The two types of sentences are clearly distinguished in section 208 (subd. 4, par. b) of the Mental Hygiene Law. It follows, then, that the presumption of concurrency established by the Penal Law with respect to indeterminate sentences has no application to an indefinite sentence to the NACC. Moreover, the presumption of concurrency which existed at common law does not benefit the relator in this case because the common-law presumption of concurrency applied only where the subsequent sentence was to the same place of confinement as the prior sentence (cf. People ex rel. Winelander v. Denno, 9 A D 2d 898; Strewl v. McGrath, 191 F. 2d 347; People v. Kennay, 391 Ill. 572; Matter of Bentley, 240 N. C. 112). In addition, the imposition of a sentence which is permitted to run concurrently with a prior sentence does not necessarily make the prior sentence run concurrently with the subsequent sentence (cf. People ex rel. De Santis v. Warden, 176 Misc. 844, affd. 262 App. Div. 1003; People ex rel. Bove v. McDonnell, 128 N. Y. 3. 2d 643, 650, app. dsmd. 284 App. Div. 937). In other words, a concurrent sentence does not in fact run “ concurrently ” unless, and until, the prior sentence also begins to run. In the case at bar, relator’s 1967 sentence did not begin to run again until after he was released by the NACO and was transferred to an institution under the jurisdiction of the Department of Correction for service of the 1967 sentence (Correction Law, former § 218; Penal Law, § 70.40, subd. 3). At no time did relator’s sentences run concurrently prior to such transfer. Accordingly, the relator is not entitled to credit on his 1967 sentence for time spent in the custody of the NACC.
Eelator’s final contention, that his right to counsel at the parole revocation hearing was violated, is also rejected, in view of the fact that he was convicted of a new crime while on parole (cf. People ex rel. Maggio v. Casscles, 28 N Y 2d 415).
The writ of habeas corpus is sustained to the extent that the relator is remanded to the custody of the NACC for service of his sentence to the NACC at an appropriate facility.