Leonard Rubeneeld, J.
The relator in this habeas corpus proceeding contends that his 1970 sentence to the Narcotic Addiction Control Commission (NACC) has been unlawfully interrupted and that he is entitled to credit, on a prior felony sentence imposed in 1968, for time spent in the custody of the NACC.
The relator was convicted of robbery in the third degree and sentenced in June of 1968 to imprisonment for an indeterminate term of up to four years. He was released on parole in December of 1969 but was rearrested in May of 1970 on new charges of robbery, possession of a dangerous weapon and possession of stolen property. Relator was thereafter convicted of a felony and, upon a determination that he was an addict, was certified to the care and custody of the NACC for a period not to exceed 60 months (Mental Hygiene Law, § 208). In the interim, the relator was declared delinquent by the Division of Parole and a parole violation warrant was lodged against him as a detainer.
On December 9,1970, the relator was transferred to an NACC program at the Green Haven Correctional Facility. The court is informed that the relator received a “ GHNC ” (Green Haven Narcotic Commission) number and that the narcotic addiction program in which the relator participated was similar to that described in People ex rel. Stutz v. Conboy (59 Misc 2d 791). He and other “ GHNC ” prisoners were kept in the general prison population under the supervision of correction officers; and the drug program was conducted by correction officers trained by Reality House, Inc., under contract with the NACC. The relator quickly proceeded through the (C), (B) and (A) groups in the program and was released to aftercare on May 14, 1971. Relator was directed to report to the 1 ‘ Bushwick Community Based Center ” in Brooklyn, New York “ upon satisfaction of the [parole] warrant” which had been lodged against him as a detainer. Relator was then removed from the drug program and immediately recommitted to Green Haven to resume service of his 1968 sentence.
The relator maintains that his immediate recommitment to Green Haven constituted an unlawful interruption of his sentence to the NACC. This contention must be rejected. The unlawful interruption of a sentence involves the unauthorized release from physical custody under one sentence for the purpose of serving a different sentence (see, e.g., People ex rel. Rainone v. Murphy, 1 N Y 2d 367; People v. Michels, 30 A D 2d 666). However, where the release from physical custody under a sentence of *999 imprisonment is authorized by statute, there is no unlawful interruption of that sentence even though the prisoner is released for the purpose of serving a different sentence. Thus, where a prisoner is released on parole from one sentence so that he might commence service of a different sentence, the prior sentence is not unlawfully interrupted even though that sentence has not yet terminated (see, e.g., People ex rel. Kenny v. Jackson, 4 N Y 2d 229, 232).
It appears, therefore, that whether a sentence has been improperly interrupted depends, in the first instance, on whether the release from actual custody prior to termination of the sentence was authorized. In the instant case, the NACC had the power to release the relator from its program at Green Haven once it had determined, that the rehabilitation of the relator had progressed to the point where “ treatment in a controlled environment ” by the NACC was no longer required and that a release to an aftercare program was warranted (Mental Hygiene Law, § 200, subd. 3). Accordingly, when the relator’s “ inpatient confinement ” by the NACC was terminated with directions to report to the Bushwick Community Based Center after satisfaction of the parole warrant, there was no unlawful or improper interruption of his NACC sentence (cf. People v. Rios, 37 A D 2d 734).
Nor does the relator’s present incarceration under the 1968 felony sentence frustrate the rehabilitation program established by the Mental Hygiene Law (cf. People v. Michels, 30 A D 2d 666, 667, supra). The aftercare program contemplated by (subd. 3 of section 200) of the Mental Hygiene Law is an intermediate step between ‘1 treatment in a controlled environment ’ ’ and complete freedom. Apart from the protection afforded to society by such post-confinement treatment and supervision of addicts, the major purpose of an aftercare program is clearly to assist the addict in readjusting to society or in coping with the problems of living in a relatively uncontrolled environment. It would make little sense, therefore, to place an addict in such a program if, at its conclusion, he is going to be returned to prison to complete service of an unexpired felony sentence. The procedure followed here is more compatible with the program set up by the Mental Hygiene Law (cf. People v. Rios, 37 A D 2d 734, supra).
Relator further contends that he is entitled to credit on his 1968 sentence for time spent in the custody of the NACC. The relator argues that the sentence to the NACC is an indeterminate sentence; that an indeterminate sentence runs concurrently with *1000 all prior sentences if, as here, the court does not specify otherwise (Penal Law § 70.25, subd. 1, par. [a]); that since the sentence to the NACC is a concurrent sentence, the 1968 sentence began to run again when service of the sentence to the NACC commenced and, therefore, the time spent in the custody of the NACC should also be credited towards his 1968 sentence.
The court is unable to agree. A sentence to the NACC is an “ indefinite sentence ” — a sentence for a maximum period fixed by law which may be terminated at any time by the discharge of the defendant (Mental Hygiene Law, § 208, subd. 4, par. b; cf. former Penal Law, § 2195; Correction Law, former § 288; People ex rel Moxan v. Fay, 36 Misc 2d 602), rather than an ‘ ‘ indeterminate sentence ’ ’— a sentence with a maximum term fixed by the court which term may not. normally be reduced (hut see Correction Law, § 805, subd. 8) although the defendant may be paroled or conditionally released prior to the expiration of the maximum term (Penal Law, §§ 70.00, 70.10, 70.40). The two types of sentences are clearly distinguished in section 208 (subd. 4, par. b) of the Mental Hygiene Law. It follows, then, that the presumption of concurrency established by the Penal Law with respect to indeterminate sentences has no application to an indefinite sentence to the NACC. Moreover, the presumption of concurrency which existed at common law does not benefit the relator in this case because the common-law presumption of concurrency applied only where the subsequent sentence was to the same place of confinement as the prior sentence (cf. People ex rel. Winelander v. Denno, 9 A D 2d 898; Strewl v. McGrath, 191 F. 2d 347; People v. Kennay, 391 Ill. 572; Matter of Bentley, 240 N. C. 112). In addition, the imposition of a sentence which is permitted to run concurrently with a prior sentence does not necessarily make the prior sentence run concurrently with the subsequent sentence (cf. People ex rel. De Santis v. Warden, 176 Misc. 844, affd. 262 App. Div. 1003; People ex rel. Bove v. McDonnell, 128 N. Y. S. 2d 643, 650, app. dsmd. 284 App. Div. 937). In other words, a concurrent sentence does not in fact run “ concurrently ” unless, and until, the prior sentence also begins to run. In the case at bar, relator’s 1968 felony sentence did not begin to run again until he was released from the custody of the NACO and recommitted to the Green Haven Correctional Facility for service of the 1968 sentence, that is, when he was returned “ to an institution under the jurisdiction of the state department of correction ” (emphasis added) (Penal Law, § 70.40, subd. 3; People ex rel. Petite v. Follette, 24 N Y 2d 60).
*1001 The fact that the NACC program was located at the Green Haven Correctional Facility, an “ institution ” of the Department of Correction (see Correction Law, § 2, subd. 4, par. [c]), did not start the prior sentence running when relator first arrived at Green Haven. The ‘ ‘ institution ’ ’ to which the relator was committed was the NACC (Mental Hygiene Law, § 208, subd. 4) and the relator remained under the jurisdiction of the NACC even though he was ‘ ‘ temporarily cared for, treated or supervised by the department ” of correction (Mental Hygiene Law, § 206-a). In People ex rel. Heyward v. Zelker (Sup. Ct., Dutchess County, Index No. 1996/1971) the petitioner’s application for credit on a prior sentence to State prison for time served on a New York City sentence at Clinton Prison was similarly denied. The court (Donohoe, J.) there stated that “ the fact that petitioner was housed in a facility maintained by the Department of Correction (as the result of a temporary ‘ accommodation arrangement ’) does not alter the fact that he was in the custody of the New York City Correctional Institution.”
The writ of habeas corpus is dismissed and the relator remanded to the custody of the Warden.